Jonathan A. Dessaules, State Bar No. 019439
F. Robert Connelly, State Bar No. 021031
**DESSAULES LAW GROUP**
5353 North 16th Street, Suite 110
Phoenix, Arizona 85016
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessauleslaw.com
dwigley@dessauleslaw.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Trish Coury,<br><br>           Plaintiff,<br><br>     vs.<br><br>Ekmark & Ekmark, LLC, an Arizona limited liability company, Kathryn Battock, Edith I. Rudder,<br><br>           Defendant. | No. _____<br><br>**COMPLAINT** |

Plaintiff Trish Coury ("Coury") alleges the following:

**PARTIES AND JURISDICTION**

1.   Coury is a resident of California who brings this suit against Defendant for violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq*.

2.   Defendant Ekmark & Ekmark, LLC ("Ekmark"), is an Arizona law firm and a "debt collector" as that term is defined in the FDCPA.

3.   Defendant Kathryn Battock ("Battock") is an Arizona citizen and a "debt collector" as that term is defined in the FDCPA. Because all acts alleged herein were taken for the benefit of and in furtherance of the marital community, Coury will seek leave to add Battock's spouse, if any, for purposes of marital community liability.

4. Defendant Edith I. Rudder ("Rudder") is an Arizona citizen and a "debt collector" as that term is defined in the FDCPA. Because all acts alleged herein were taken for the benefit of and in furtherance of the marital community, Coury will seek leave to add Rudder's spouse, if any, for purposes of marital community liability.

5. Defendant is present in Arizona and/or caused events to occur and committed actions in Maricopa County, Arizona, which are the subject of this Complaint.

6. Jurisdiction exists pursuant to 28 U.S.C. § 1331.

7. Jurisdiction and venue are proper in this Court.

## THE FAIR DEBT COLLECTION PRACTICES ACT

8. Congress enacted the FDCPA after a congressional finding of abundant evidence of the use of abusive, deceptive, and unfair debt collection practices on the part of many debt collectors contributed to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of personal privacy.

9. The FDCPA generally prohibits a debt collector from using misleading, deceptive, or false representations in the collection of debts. It further prohibits the use of unfair or unconscionable means to collect debts, including the attempt to collect debts to which the debt collector is not legally entitled to collect.

10. Coury is a "consumer" as defined in 15 U.S.C. § 1692a(3).

11. The assessments, late fees, violation fines, collection costs, attorneys' fees, court costs, and other charges that are the subject of Defendants' debt collection practices constitute "debts" as defined in 15 U.S.C. § 1692a(5).

12. The resulting judgments that Defendants obtain in their debt collection practices constitute debts as defined in 15 U.S.C. § 1692a(5).

13. Defendant Ekmark is a debt collector as defined in 15 U.S.C. § 1692a(6). Specifically, but without limitation, and upon information and belief, Defendant Ekmark files hundreds of collection actions every year and advertises on it website that it "prides itself on

2

having attorneys and paralegals dedicated to the effective and ethical collection of past due assessments" that offers clients "unparalleled service, results and communication throughout all stages of the collection process." According to its website, Defendant Ekmark offers "collection services" to clients that include pre-suit demand letters, preparation of notices and claim of lien, payment plan arrangements, foreclosure actions, and personal judgment actions.

14. Defendants Battock and Rudder are debt collectors as defined in 15 U.S.C. § 1692a(6) who are in the employ of Defendant Ekmark and engage in many of the debt collection practices alleged in the preceding paragraph.

15. Defendants have used false, deceptive, and misleading misrepresentations and means to collect debts in violation of 15 U.S.C. § 1692e.

16. Defendants have engaged in unfair and unconscionable means to collect or attempt to collect debts in violation of 15 U.S.C. § 1692f.

**OVERVIEW OF ARIZONA HOA LAW**

17. The Arizona Legislature has enacted the Arizona Condominium Act, A.R.S. §§ 33-1201 to 33-1270, and the Planned Communities Act, A.R.S. §§ 33-1801 to 33-1818. The Planned Community Act applies to all planned communities, colloquially referred to as homeowners associations or community associations, within the State of Arizona. The Condominium Act applies to all condominiums within the State of Arizona.

18. Both Acts contain nearly identical provisions relating to the imposition, collection, and foreclosure of assessments. *See, e.g.*, A.R.S. §§ 33-1256 and 33-1807. These provisions generally allow associations to levy assessments, to impose a lien for assessments, and to foreclose said lien when the assessments have been delinquent for a period of one year or in the amount of one thousand two hundred dollars ($1,200.00) or more, whichever occurs first.

19. Both Acts provide that any payments received from an owner must be applied "first to unpaid assessments, for unpaid charges for late payment of those assessments, for

reasonable collection fees and for unpaid attorney fees and costs incurred with respect to those assessments, in that order…."

20.     Both Acts also provide that an association's lien for assessments are prior to all other liens, interests, and encumbrances on a unit except for liens or encumbrances recorded prior to the recordation of the declaration, a recorded first mortgage on a unit, and liens for real estate taxes and other governmental assessments or charges against the unit. Consequently, the Acts create powerful methods for the collection of assessments that include, among other things, the forced sale of a consumer's residence.

21.     Defendant Ekmark and its attorneys, including Battock and Rudder, hold themselves out as experts with respect to the Planned Community Act and Condominium Act and devote their practice almost exclusively, if not exclusively, to the representation of homeowners' associations, community associations, and condominium associations.

22.     Upon information and belief, Defendants file hundreds of collection actions every year and obtain judgments, many by default or stipulation, against Arizona consumers and routinely pursues the execution of those judgments after they are obtained. Also upon information and belief, Defendants regularly file judicial foreclosure actions seeking to sell a consumer's home at a sheriff's sale as part of its debt collection practice.

23.     Upon information and belief, Defendants' collection practices do not vary materially, if at all, between collection actions it files under the Condominium Act and actions it files under the Planned Communities Act, and Defendants routinely use the same litigation forms and templates without regard to the specific statutes under which they are proceeding. As a result, the resulting judgments that Defendants obtain against Arizona consumers often contain identical provisions.

### GENERAL ALLEGATIONS

24.     On September 15, 2014, Defendants filed a lawsuit against Coury on behalf of Val Vista Greens, Inc., a homeowners' association, seeking to foreclose an assessment lien on two

properties, Lot 1046 and Lot 1087. A true and correct copy of the Complaint is attached as Exhibit 1.

25. Defendants alleged in the lawsuit that, as of the date on which Defendant filed the Complaint, Coury owed "prior legal and collection costs incurred, lien fees, assessments and late fees" totaling $3,800.75 on Lot 1046 and $3,693.25 on Lot 1087. These amounts allegedly did not include monetary penalties.

26. Under Arizona law, a homeowners' association is not entitled to foreclose if the past due assessments, "excluding reasonable collection fees, reasonable attorney fees and charges for late payment of and costs incurred with respect to those assessments," unless the homeowner has been delinquent for a period of one year or in the amount of $1,200 or more, whichever occurs first.

27. The unpaid assessments balance for Lots 1046 and 1087, excluding collection fees, attorney fees, and late charges, as of the date on which Defendants filed the Complaint, according to the ledgers attached to the Complaint as Exhibits C and E, respectively, totaled $2,295.00 for each lot.

28. Assessments continued to accrue after Defendants filed the Complaint at the rate of $85.00 per lot per month. Upon information and belief, if Defendants accelerated the assessments due for Lots 1046 and 1087 through the end of 2015, the total assessments due for each lot would be $3,570.00.

29. However, Defendants had not accelerated the assessments as of at least May 1, 2015. As such, assessments due for Lots 1046 and 1087 as of May 1, 2015 were actually $2,975 for each lot.

30. In or about March 2015, after Defendants had filed the Complaint but before it obtained judgments in the case, Coury made payments totaling $3,800.00 for Lot 1046 and $3,693.25 for Lot 1087. Defendants acknowledged receipt of these payments in two Affidavits

1 filed with the Court on May 5, 2015. True and correct copies of the Affidavits filed on May 5,
2 2015 are attached as Exhibits 2 and 3.

3     31. At the time that Coury made the payments alleged in the preceding paragraph, she
4 had paid more than the unpaid assessments that were due and owing at the time as well as
5 through the end of December 2015 if the assessments were accelerated for 2015. Consequently,
6 Defendants no longer had the right to foreclose its assessment liens on Lots 1046 or 1087 as of
7 at least May 2015 when Defendants filed the Affidavits in support of its motion for default
8 judgments of foreclosure.

9     32. Nevertheless, in its May 2015 Affidavits, Defendants avowed under penalty of
10 perjury that the "Forecloseable Balance Owed" on Lot 1046 was $720.00 and that the
11 "Forecloseable Balance Owed" on Lot 1087 was $826.75.

12     33. Coury paid more than the "Forecloseable Balance Owed" prior to entry of the
13 foreclosure judgments, but Defendants continued to obtain foreclosure judgments in violation of
14 Arizona law.

15     34. However, Defendants falsely represented to Coury in a letter dated April 24, 2015
16 that Coury needed to pay the sum of $3,244.13 with respect to Lot 1046 and $2,916.37 with
17 respect to Lot 1087 in order to avoid foreclosure. A true and correct copy of the April 24, 2015
18 letter is attached as Exhibit 4.

19     35. The amounts that Defendants demanded from Coury in its April 24, 2015 letter
20 included future and unadjudicated attorneys' fees and costs.

21     36. Although she had already paid more than necessary to avoid foreclosure under
22 Arizona law, Coury tendered checks to Defendant in the amount of $3,244.13 with respect to
23 Lot 1046 and $2,916.37 with respect to Lot 1087.

24     37. Defendants received and negotiated these checks on May 6, 2015.

25     38. The checks that Coury delivered to Defendants, therefore, were the exact amount
26 that Defendants had represented to her as of April 24, 2015 that she needed to pay in order to

avoid foreclosure. The checks were also $2,524.13 and $2,089.62 more than the amount that Defendants had represented in its May 5, 2015 Affidavits as the "Forecloseable Balance Owed" respectively on Lots 1046 and 1087.

39.  According to the April 24, 2015 letter, Coury's $3,244.13 check for Lot 1046 should have covered all of the following charges, totaling $3,734.13, that were set forth in the letter:

| | |
|---|---|
| $3,001.13 | Amount due and owing as to Lot 1046 per April 8, 2014 ledger (enclosed) *(This amount also includes monetary penalties in the amount of $490.00 which are not required to be paid for the litigation to be dismissed and can be deducted from this payoff, however, if not paid, the dismissal will be without prejudice, meaning the Association can sue you in the future for such unpaid amounts, and therefore demand for payment is made)* |
| $310.00 | Attorneys' fees recently incurred related to Lot 1046, not yet reflected on ledger, incurred regarding the litigation. |
| $305.00 | Attorneys' fees to be incurred in dismissal of litigation, releasing of lien and Lis Pendens, attributable to Lot 1046 |
| $18.00 | County recorder fee to record lien release and release of Lis Pendens for Lot 1046 |
| $15.00 | April 2015 late fee for Lot 1046 |
| $85.00 | May 2015 assessment for Lot 1046 |

40.  Because Coury tendered, and Defendants accepted, the sum of $3,244.13 (*i.e.*, $3,734.13 less $490 "not required to be paid…and which can be deducted from this payoff"), Coury reasonably believed that these amounts had been paid and that no basis existed to permit foreclosure after that date.

41.  Not only did Defendants continue to obtain the foreclosure judgment for Lot 1046, Defendants wrote Coury on May 20, 2015 demanding payment of amounts that she had already paid based on her prior payment under threat of a sheriff's sale, including the May 2015

assessment, the April 2015 late fee, future attorneys' fees to be incurred to release the liens and county recorder fees.

42. According to the April 24, 2015 letter, Coury's $2,916.37 check for Lot 1087 should have covered all of the following charges, totaling $3,646.37, that were set forth in the letter:

| | |
|---|---|
| $2,895.37 | Amount due and owing as to Lot 1087 per April 8, 2014 ledger (enclosed) *(This amount also includes monetary penalties in the amount of $730.00 which are not required to be paid for the litigation to be dismissed and can be deducted from this payoff, however, if not paid, the dismissal will be without prejudice, meaning the Association can sue you in the future for such unpaid amounts, and therefore demand for payment is made)* |
| $328.00 | Attorneys' fees recently incurred related to Lot 1087, not yet reflected on ledger, incurred regarding the litigation. |
| $305.00 | Attorneys' fees to be incurred in dismissal of litigation, releasing of lien and Lis Pendens, attributable to Lot 1046 |
| $18.00 | County recorder fee to record lien release and release of Lis Pendens for Lot 1046 |
| $15.00 | April 2015 late fee for Lot 1046 |
| $85.00 | May 2015 assessment for Lot 1046 |

43. Because Coury tendered, and Defendants accepted, the sum of $3,244.13 (*i.e.*, $3,734.13 less $490 "not required to be paid…and which can be deducted from this payoff"), Coury reasonably believed that these amounts had been paid and that no basis existed to permit foreclosure after that date.

44. Not only did Defendants continue to obtain the foreclosure judgment for Lot 1087, Defendants wrote Coury on May 20, 2015 demanding payment of amounts that she had already paid based on her prior payment under threat of a sheriff's sale, including the May 2015 assessment, the April 2015 late fee, future attorneys' fees to be incurred to release the liens and county recorder fees.

8

45. Defendants received these checks the day after representing in the Affidavits that the "Forecloseable Balance Owed" on Lot 1046 was just $720.00 and that the "Forecloseable Balance Owed" on Lot 1087 was just $826.75.

46. Defendants did not apply the payments that it received on May 6, 2015 to the "Forecloseable Balance Owed," and thereby created the misimpression that a "Forecloseable Balance" still existed at the time it obtained the default judgments.

47. Upon receipt of payments that exceeded the "Forecloseable Balance Owed," Defendants' no longer had any right to seek a foreclosure judgment against Coury.

48. Although Defendants indisputably received more than the "Forecloseable Balance" for each lot as of May 6, 2015, Defendants nevertheless sought, and obtained, default judgments of foreclosure with respect to Lots 1046 and 1087. True and correct copies of the default judgments for Lots 1046 and 1087 are attached as Exhibits 5 and 6, respectively.

49. Defendants drafted both judgments and was solely responsible for their content.

50. Defendants submitted the proposed default judgments after receiving the checks for $3,244.13 and $2,916.37.

51. The default judgment for Lot 1046 that Defendants drafted stated that the unpaid assessments for Lot 1046 totaled $3,140.00 at the time Defendants filed the lawsuit. It also stated that assessments through May 2015, the date that Defendants sought the default judgment, were an additional $680 and late fees totaled $105. It also asserted that accelerated assessments through the end of 2015 totaled an additional $595.00. Thus, according to Defendants' own drafted judgment, the total balance of assessments due through the end of 2015 was $4,520.00.

52. According to the default judgment, Coury had paid Defendants at least $7,044.13 with respect to Lot 1046 as of the date that Defendants submitted the default judgment for the court's signature.

1  53.     Because Coury had paid $2,524.13 more than the assessments that Defendants
2  asserted were due through the end of 2015, Defendant had no legal basis for obtaining a default
3  judgment of foreclosure against Coury with respect to Lot 1046.

4  54.     The default judgment for Lot 1046 also awarded $543.00 in attorneys' fees and no
5  taxable costs. After applying Coury's $2,524.13 overpayment to the fees awarded in the default
6  judgment for Lot 1046, Coury still had an overpayment of $2,024.13 with respect to Lot 1046.

7  55.     The default judgment for Lot 1087 inaccurately stated that the unpaid assessments
8  for Lot 1046 totaled $3,140.00 at the time Defendants filed the lawsuit. It also stated that
9  assessments through May 2015, the date that Defendants sought the default judgment, were an
10 additional $680 and late fees totaled $105. It also asserted that accelerated assessments through
11 the end of 2015 totaled an additional $595.00. Thus, according to Defendants' own drafted
12 judgment, the total balance of assessments due through the end of 2015 was $4,520.00.

13 56.     According to the default judgment, Coury had paid Defendants at least $6,609.62
14 with respect to Lot 1087 as of the date that Defendants submitted the default judgment for the
15 court's signature.

16 57.     Because Coury had already paid $2,089.62 more than the assessments that
17 Defendants asserted were due through the end of 2015, Defendants had no legal basis for
18 obtaining a default judgment of foreclosure against Coury with respect to Lot 1087.

19 58.     The default judgment for Lot 1087 also awarded $584.00 in attorneys' fees and no
20 taxable costs. After applying Coury's $2,089.62 overpayment to the fees awarded, Coury still
21 had an overpayment of $1,505.62 with respect to Lot 1087.

22 59.     Despite the fact that the judgments reflected that Coury had paid more than the
23 Forecloseable Balance Owed on both Lot 1046 and Lot 1087, Defendants on May 20, 2015
24 wrote, falsely stating that she she still owed $2,445.97 on Lot 1046 and $2,731.87 on Lot 1087
25 and, in order to avoid a sheriff's sale, she needed to pay the sum of $1,948.13 with respect to
26

10

1 Lot 1046 and $1,990.11 with respect to Lot 1087. A true and correct copy of the May 20, 2015
letter is attached as Exhibit 7.

60.   The letter clearly threatened to a conduct sheriff's sale of each of the two properties unless Coury paid $1,948.13 for Lot 1046 and $1,990.11 for Lot 1087.

61.   The May 20, 2015 letter, written just eight days after of the default judgments, falsely stated that Defendants had incurred or will incur $855 in additional attorneys' fees, $693 in future attorneys' fees, and $36 in future costs that Cory was liable and demanded that Coury pay these amounts in order to avoid sheriff's sales of the properties.

62.   These additional attorneys' fees that Defendants demanded as a condition of stopping the sheriff's sale were never awarded by any court or submitted to any court for a reasonableness determination.

63.   Although the default judgments included boilerplate language purporting to award Defendants' client "all reasonable costs and attorneys' fees incurred…after entry of this judgment in collecting the amount awarded herein," this boilerplate provision violates Arizona law and, even if it is enforceable, a judgment-creditor does not have the authority to determine the amount of costs and fees to be awarded.

64.   The May 20, 2015 letter did not take into account Coury's May 6, 2015 payments. Although it increased the "Forecloseable Balance Owed" that was set forth in the May 5, 2015 Affidavits by the amount of accelerated assessments through 2015, it failed to apply Coury's May 6, 2015 payments to the "Forecloseable Balance Owed."

65.   If Defendants had properly applied the May 6 payments to the "Forecloseable Balance," there would have been no forecloseable balance.

66.   Defendants' refusal to properly apply her payments and continued threats to conduct sheriff's sales forced Coury to retain counsel that she would not have had to obtain but for Defendants' false and deceptive statements and unfair and unconscionable debt collection tactics.

67. Although Coury moved to set aside or declare the judgments satisfied, she remained unsettled and concerned about Defendants' continued threats to conduct sheriff's sales of Lots 1046 and 1087 and, therefore, on June 25, 2015, paid an additional $1,156 on Lot 1046 and $1,193 on Lot 1087.

68. Consequently, Coury paid a total of $3,180.13 more than the amounts awarded in the default judgment for Lot 1046 and $2,698.62 more than the amounts awarded in the default judgment for Lot 1087 based on Defendants' baseless threats to conduct a sheriff's sale.

69. Defendants' actions caused significant stress, anxiety, and consternation that Coury would lose her properties to foreclosure unless she paid everything that Defendant demanded that she pay.

## COUNT ONE

## VIOLATION OF 15 U.S.C. § 1692e

70. Coury incorporates all of the above allegations as if set forth fully herein.

71. Section 1692e of the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any debt. These false, deceptive, and misleading misrepresentations and means include, but are not limited to, false representations regarding the character, amount, or legal status of any debt and any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

72. Defendants have used false, deceptive, and misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e by, among other things, inflating the principal balance due by mischaracterizing unadjudicated attorneys' fees as a principal amount; continuing to seek foreclosure judgments after Coury had paid significantly more than the balance of unpaid assessments; obtaining default judgments of foreclosure in violation of Arizona law after the Coury had paid, in full, all unpaid assessments (*i.e.*, the "Forecloseable Balance Owed"); threatening to conduct a sheriff's sale when the default

judgments on their face demonstrate that Coury had paid significantly more than the amount actually awarded in each judgment; misrepresenting to Coury that a legal basis existed to conduct a sheriff's sale when the default judgments on their face would indicate to the least sophisticated consumer that they judgments had been paid in full; threatening to conduct sheriff's sales unless Coury agrees to pay future, not-yet-incurred costs and attorneys' fees; forcing Coury to pay nearly $6,000 more than the amounts of the judgments it obtained against her in order to avoid sheriff's sales; increasing the amount due in judgment collection letters to include amounts that have not been lawfully incurred and that are otherwise not authorized or prohibited by Arizona law; demanding the payment of future, unadjudicated attorneys' fees and costs as a condition of satisfying a judgment and/or avoiding foreclosure and a sheriff's sale; and failing to properly apply payments received in accordance with Arizona law.

73. Defendants' actions are likely to deceive, mislead, and/or confuse the least sophisticated consumer in several material respects. For example:

   a. The statements in the May 5, 2015 Affidavits that the "Forecloseable Balance Owed" was $720.00 for Lot 1046 and $826.75 for Lot 1087 would lead a least sophisticated consumer to believe that the payment of these amounts would be sufficient to avoid foreclosure.

   b. The default judgments would lead a least sophisticated consumer to believe that the only attorneys' fees awarded for Lot 1046 were $543 and the only attorneys' fees awarded for Lot 1087 were $584.00, and, therefore, Coury had overpaid attorneys' fees based on Defendant's prior representations *** prior payments based on the ledger that contained unadjudicated pre-litigation attorneys' fees, the complaint, Defendants' April 24 letters, and other representations of Defendants.

   c. The default judgment for Lot 1046 would lead a least sophisticated consumer to believe that nothing remained due and owing on the judgment because the total assessments sought from Coury were $4,520 ($3,140 in Paragraph A, plus $785 in Paragraph C, plus $595 in Paragraph E) plus the $543 in attorneys' fees (Paragraph 3) totaled $5,063, but the judgment reflects payments received totaling $7,024.13 (Paragraphs D and F).

   d. The default judgment for Lot 1087 would lead a least sophisticated consumer to believe that nothing remained due and owing on the judgment because the total assessments sought from Coury were $4,520 ($3,140 in Paragraph A, plus $785 in Paragraph C, plus $595 in

13

      Paragraph E) plus the $584 in attorneys' fees (Paragraph 3) totaled $5,104, but the judgment reflects payments received totaling $6,609.62 (Paragraphs D and F).

e. The default judgment for Lot 1046 would lead a least sophisticated consumer to believe that the principal assessments owed at the time the Complaint was filed was $3,140 when in actuality this amount included substantial unadjudicated attorneys' fees and costs that Defendants had misrepresented as being part of the "principal."

f. The default judgment for Lot 1087 would lead a least sophisticated consumer to believe that the principal assessments owed at the time the Complaint was filed was $3,140 when in actuality this amount included substantial unadjudicated attorneys' fees and costs that Defendants had misrepresented as being part of the "principal."

g. Defendants' April 24, 2015 letter, which states that the Default Hearing was "currently set for May 12, 2015" would lead a least sophisticated consumer to believe that payment of the sum of $3,244.13 (*i.e.*, the $3,734.13 balance due less the "unpaid monetary penalties in the amount of $490 which are not required to be paid for the litigation to be dismissed and can be deducted from this payoff") prior to the date of the Default Hearing, and which Coury paid on May 5, 2015 and Defendants accepted on May 6, 2015, would be sufficient to dismiss the litigation or, at a minimum, avoid foreclosure.

h. Defendants' April 24, 2015 letter, which states that the Default Hearing was "currently set for May 12, 2015" would lead a least sophisticated consumer to believe that payment of the sum of $2,916.37 (*i.e.*, the $3,646.37 balance due less the "unpaid monetary penalties in the amount of $730 which are not required to be paid for the litigation to be dismissed and can be deducted from this payoff"), and which Coury paid on May 5, 2015 and Defendants accepted on May 6, 2015, prior to the date of the Default Hearing would be sufficient to dismiss the litigation or, at a minimum, avoid foreclosure.

i. Most of Defendants' actions and statements were similarly likely to deceive, mislead, and/or confuse the least sophisticated consumer into believing that they would be able to avoid a foreclosure judgment or sheriff's sale by paying more than the amount required to be paid.

74.     Defendants have used false, deceptive, and misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e by including language in default judgments purporting to entitle them to recover post-judgment attorneys' fees and costs incurred in connection with the alleged collection of the judgment in violation of Arizona law, unilaterally determining the amount of those post-judgment attorneys' fees and costs that it

is entitled to recover, and adding or attempting to add those amounts to the debts without any judicial oversight or involvement.

75. Arizona law does not authorize a judgment creditor to recover post-judgment attorneys' fees and costs for collection of a judgment and no independent legal basis existed for Defendants to collect such fees or costs. Even if it did, Arizona law does not allow a judgment creditor's attorneys to unilaterally decide the reasonableness of those fees and costs and would require a judgment creditor to return to the Court to obtain an award as to the specific amount of fees and costs sought.

76. Defendants' actions specifically violate, *inter alia*, 15 U.S.C. §§ 1692e(2)(A) and (B), 1692e(5), and 1692e(10).

77. Coury is entitled to recover damages pursuant to 15 U.S.C. § 1692k as well as her attorneys' fees and costs incurred pursuing this action.

## COUNT TWO

### VIOLATION OF 15 U.S.C. § 1692f

78. Coury incorporates all of the above allegations as if set forth fully herein.

79. Section 1692f of the FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.

80. Defendants have used unfair and unconscionable means to collect an alleged debt in violation of 15 U.S.C. § 1692f for the conduct alleged above. Specifically, but without limitation, it is an unfair and unconscionable collection practice in violation of the FDCPA for Defendant to:

   a. Demanding, as a condition of discontinuing a foreclosure action, that the consumer pay future, unadjudicated attorneys' fees and attorneys' fees incurred post-judgment in the collection of the judgment.

   b. Continuing to seek or obtain a foreclosure judgment after a consumer has paid, in full, the "Forecloseable Balance Owed."

   c. Threatening to proceed with a sheriff's sale after the consumer had paid more than the face amount of the foreclosure judgment.

    d. Including language purporting to require the consumer to pay future, post-judgment attorneys' fees and costs incurred in the collection of the judgments when such language does not comport with Arizona law.

    e. Unilaterally increasing the amount of a judgment to add unadjudicated attorneys' fees and costs that have not been awarded, determined by any court to be reasonable, and in some cases not even incurred.

    f. Inflating the principal balance due by mischaracterizing pre-litigation attorneys' fees as the principal amount due in the complaint.

    g. Failing to cease collection efforts after a consumer has paid the face amount of the judgment.

81. Coury is entitled to recover damages for herself pursuant to 15 U.S.C. § 1692k as well as her attorneys' fees and costs incurred pursuing this action.

WHEREFORE, Coury prays for relief against Defendants as follows:

(A) Awarding Coury actual damages in an amount proven at trial;

(B) Awaridng Coury statutory damages against each of the Defendants under the FDCPA;

(C) For an award of attorneys' fees and costs of this action pursuant to 15 U.S.C. § 1692k(3) and/or Rule 23.

(D) Awarding Coury pre-judgment and post-judgment interest as permissible by law; and

(E) Awarding such other and further relief as the Court deems just and proper.

DATED this 1st day of September 2015.

                                    DESSAULES LAW GROUP

                                  By:   /s/ Jonathan A. Dessaules
                                        Jonathan A. Dessaules
                                        Robert F. Connelly
                                        Douglas C. Wigley
                                        *Attorneys for Plaintiff*